Graham, Judge,
delivered the opinion of the court:
On and prior to December 2, 1917, plaintiff was the owner of the motor ship Oregon. On that date, while the ship was at Seattle, Wash., the United States Shipping Board, under authority of the act of June 15, 1917, 40 Stat. 182, and Executive order of July 11, 1917, delegating to that board as the representative of the President of the United States the power to take over, operate, and manage such vessels, requisitioned the Oregon.
On December 3, 1917, plaintiff and the Shipping Board entered into a requisition charter in writing, time-form basis, by which their rights and duties with respect to the vessel were defined. The charter contained the following provisions:
“ First. * * * The vessel when placed at the disposal of the United States, as directed by it, shall be or shall forthwith be made by and at the expense of the owner tight, staunch, strong, well, and sufficiently tackled, appareled, furnished, outfitted, and equipped and in every respect seaworthy and in good running order and condition. * * * Any deficiency in these respects must be remedied forthwith by and at the expense of the owner; and any time lost in remedying such deficiency is not to be paid for by the United States.
*258 “ Second. The owner shall operate the vessel for the-United States, shall provide and pay for all provisions. * * * officers and crew * * * and shall maintain the steamship in thoroughly efficient state in hull and machinery, tackle, apparel, furniture, and equipment during, the service.”
“ Eighth. The United States shall pay for the use of the-steamship at the monthly rate which shall from time to-time be established by the United States Shipping Board for a vessel of her description * * *.”
“ Twelfth. The owner shall assume the marine risks * * * 5?
“ Twenty-second. In the event of loss of time from deficiency of men or stores, breakdown of machinery * * *- preventing the working of the vessel for more than twenty-four consecutive hours, the hire shall be reduced one-half until the vessel be again in an efficient state to resume her service.”
The motor ship was afterwards turned over to the Matson Navigation Company, an agency of the Shipping Board,, for operation. The ship started on a voyage from San Francisco to Honolulu in February, 1918, when her engines broke down and it became necessary to tow her into. Honolulu. Finding that she could not be repaired in that, locality, the Shipping Board was obliged to send out a. boat to bring her to San Francisco, where she arrived sometime during April, 1918. The plaintiff took charge of the.vessel there and arranged for the repairs, as the charter required. The repairs continued from May, 1918, until June, 1919, during which time the vessel was in plaintiff’s, hands and the repairs made on its account.
The Government refused to, and did not, pay hire after February, 1918. Serious questions had arisen during the-examinations and surveys for the repairs as to whether the-breakdown of the engines was not due to defects therein at. the time of requisition. There was a difference with respect to value and rates of hire between vessels under requisition, and those not under requisition, the value being higher in the latter case. Plaintiff having received no payment for hire after Febru'ary, 1918, its attorney came to Washington,. D. C., sometime prior to October 21 for the purpose of' endeavoring to secure the payment and a settlement. He- *259 sought and held a conference with a representative of the Shipping Board with this purpose in view. The latter contended that the Matson Navigation Company, which had salvaged the Oregon, had not been paid in full for salvage, and had a claim against the ship which had to be taken care of in the settlement; that in the Government’s view the plaintiff was not entitled to anything, but that as the Government had possession of the ship for a time it was willing to pay something. An offer of a sum in settlement, effective May 15, 1918, was made by the Government and was accepted, with the understanding and on condition that the ship would be released from requisition and that all responsibility and liability upon the part of the Government would cease May 15, 1918. The sum offered was paid to plaintiff’s representative on October 22, 1918. A resolution based on this agreement was adopted by the Shipping Board on October 21, which released the vessel from requisition as of May 15, 1918. On the same date plaintiff was notified of the release and the condition on which it was made. The notice was received without protest or objection by plaintiff-
No written or verbal protest was made by plaintiff’s representative at or after the time he received the settlement money, nor does it appear that any objection was made to the settlement by plaintiff until August 18, 1918, when by letter it called the Shipping Board’s attention to an error in the settlement which it claimed placed the dead-weight tonnage of the ship at too low a figure. As stated in plaintiff’s letter, it was “ a mutual mistake of the parties.” The error was corrected, the account adjusted, and a sum due plaintiff on account of this adjustment was paid to and accepted by it.
On November 26, 1918, plaintiff made formal application to the Shipping Board for the transfer of the Oregon to the Alabama Steamship Co., which transfer was authorized by resolution of the board on December 16. The ship was afterwards sold to that company.
The claim involved here was adjusted upon definite and well-understood terms. It is plain that the settlement was intended to be final, and was so regarded by both parties. The principles controlling the question of a final settlement and acquiescence where the amount claimed is “ confessedly *260 due ” and a smaller sum is accepted and received are fully discussed by the Supreme Court in the case of The St. Louis, Brownsville & Mexico Railway Co. v. United States, 268 U.S. 169, which has been cited in the briefs of both parties. That was a case where a sum was confessedly due plaintiff and a smaller amount was paid to it. While the facts of this case, like those in the case cited, show conduct on the part of plaintiff before payment which led the Government to believe that the amount offered would be received in satisfaction by plaintiff, and conduct after payment which was calculated to lead the Government to believe that the amount received was accepted in full satisfaction of the claim and that the settlement was acquiesced in, it is not necessary to rest a decision on that case. This is not a claim for an amount admittedly due plaintiff. On the contrary the Government took the position at the outset of the negotiations for a settlement that there was nothing due plaintiff. It was a case of the compromise of a disputed claim — not a claim confessedly due either in law or in fact. The Government had stopped payment of hire in February, 1918, and made no payment after that time. Under the contract, where repairs were needed growing out of deficiencies in regular equipment, plaintiff was entitled to no hire during the period the ship was undergoing such repairs. There were serious questions as to whether the breakdown of the engines on the voyage to Honolulu, which rendered the boat useless to the Government after February, 1918, was not due to deficiencies in equipment existing when the Government took possession. At the time of settlement the ship was still undergoing repairs, which were not completed until eight months thereafter. Plaintiff not only received the money paid as consideration for the settlement, but also secured what it had been seeking — the release of its vessel from requisition. By this release the Government surrendered its rights under the charter contract. The vessel released from requisition had a higher market value and would bring a higher rate of hire than the plaintiff was receiving under the requisition charter. It is hardly probable that the Government would have paid this amount of money and released the vessel for any other purpose than a final settle *261 ment. It did not intend to leave open for future litigation and adjustment the question of additional hire. The plaintiff had asked for a release of the vessel, which was granted upon the condition that the Government should be released of all responsibility and liability under the contract after May 15, 1918. When plaintiff accepted this release it consented to the abrogation of the contract as of May 15, 1918, and was estopped from claiming hire after the date fixed. It certainly can not be reasonably assumed that the Government intended to surrender the ship and the use of it to plaintiff as of May 15, 1918, and continue to pay hire thereafter. The plaintiff can not have both its ship and the hire thereof. It can not hold and let go at the same time. The question of settlement of disputed claims was passed upon by this court in the case of St. Louis Car Co. v. United States, 59 C. Cls. 547, 554, where many authorities are cited.
It must be held that the settlement in this case was final and binding upon both parties. This precludes the plaintiff from a recovery. The petition should be dismissed, and it is so ordered.
Hay, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.